Rockingham
No. 86-083

SHERRYL M. HENRY

v.

JOHN G. HENRY

March 6, 1987

*Wiggin & Nourie,* of Manchester (*L. Jonathan Ross* and *Michael L. Alfano* on the brief, and *Mr. Alfano* orally), for the plaintiff.

*Holland, Donovan, Beckett & Welch,* of Exeter (*William H. M. Beckett* on the brief and orally), for the defendant.

JOHNSON, J. This is an appeal from the report of a Master (*Stephanie T. Nute,* Esq.), approved by the Superior Court (*Manias,* J.), providing for a termination of the plaintiff's alimony. It presents for our review the question of whether the master abused her discretion

in terminating the plaintiff's alimony under the circumstances of this case. We reverse and remand the case for further proceedings consistent with the principles enunciated below.

The parties were married on October 26, 1963, in Eugene, Oregon. In early 1967, the plaintiff was diagnosed as having multiple sclerosis. In 1974 the parties moved to New Hampshire, and in 1978 the plaintiff filed for an uncontested divorce on grounds of irreconcilable differences.

The divorce order was dated August 8, 1978, and the decree approved and incorporated the parties' permanent stipulation. The settlement set forth in the stipulation awarded plaintiff the marital home, the automobile, moving and relocation expenses, and the continuation of insurance benefits. Paragraph 5 of the stipulation, signed by both parties, provided as follows:

> "The defendant shall pay the plaintiff the sum of $185 per month payable on the first day of each month for her support. Said payments shall continue until the sale of the residence. Thereafter defendant shall pay the plaintiff a sum to be computed at the rate of twenty percent (20%) of defendant's gross income which, as of December 31, 1977 was $39,101.94. Said payments shall be computed annually following provision by the defendant to the plaintiff of his federal income tax return. Furthermore said payments shall be rendered in 12 equal monthly installments, each payment due on the first day of each month beginning with the month following the sale of the premises. However, under no circumstances shall the monthly amount of support contemplated herein fall below $500. Said payments shall continue until the remarriage of the plaintiff or the death of either party. . . ."

In 1981, the defendant, pursuant to the three-year rule of RSA 458:19, as it read at that time, stopped paying alimony. The plaintiff filed a motion for renewal and extension of alimony. The defendant answered with a motion to reduce alimony payments, alleging that he was about to become unemployed. In an order dated May 27, 1983, the Superior Court (*Nadeau*, J.), approving the report of the Master (*Gary R. Cassavechia*, Esq.), reduced the alimony obligation to $400 per month.

In 1985, the plaintiff filed another petition for modification and extension of alimony. Relying on the notion, developed in *Calderwood v. Calderwood*, 114 N.H. 651, 653, 327 A.2d 704, 706 (1974), that the primary purpose of alimony is to encourage the recipient spouse to establish an independent source of income, the master

ruled that the plaintiff would receive payments until February 3, 1987, at which time all alimony payments would cease. This appeal followed.

■ As a threshold matter, we must determine which version of the New Hampshire alimony statute, RSA 458:19, generally amended as of January 1, 1986, applies to this case, in which the permanent stipulation and divorce decree were effective in September, 1978. Because the general amendment to the statute carries an effective date of January 1, 1986, we hold that the "new" provision (RSA 458:19 (Supp. 1986)) is applicable only to orders based upon divorce decrees entered on or after that date. Orders based upon divorce decrees entered *before* January 1, 1986, will be governed by the "old" provision (RSA 458:19 (1983)). We note that this is the approach taken in other States that have amended their alimony laws. *See, e.g.,* N.Y. DOM. REL. LAW § 236B 9b (McKinney 1986); *Tucker v. Tucker,* 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1058 (1982).

RSA 458:19 provides as follows:

"Upon a decree of nullity or divorce, the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just, provided that in cases in which no children are involved, or in which the children have reached the age of majority, the order shall be effective for not more than 3 years. . . . However, such order may be renewed, modified or extended if justice requires for periods of not more than 3 years at a time; and may compel the husband to disclose, under oath, the situation of his property; and before or after the decree, may make such orders and use such process as may be necessary."

■■ We now reach the principal issue in this case: whether the trial court, notwithstanding the modifiability of the original decree, abused its discretion in ordering alteration and termination of the alimony award. *Hanson v. Hanson,* 121 N.H. 719, 720, 433 A.2d 1310, 1311 (1981) (a marital master's determination will not be set aside absent an abuse of discretion). We note at the outset that the trial court has broad discretion to determine whether justice requires a renewal of alimony. *Healey v. Healey,* 117 N.H. 618, 622, 376 A.2d 140, 143 (1977). Nevertheless, in making such a determination, "the trial court *must* consider *all of the circumstances of the parties." Id.* at 621, 376 A.2d at 142 (emphasis added) (citing

*Morphy v. Morphy,* 114 N.H. 86, 88, 315 A.2d 631, 632 (1974)). "[J]ustice may often require that alimony orders be renewed after three or six years. . . . In such circumstances the primary purpose of the three-year provision in RSA 458:19 is 'to provide a periodic review of the needs and resources of the parties.'" *Healey, supra* at 621, 376 A.2d at 142 (quoting *Calderwood v. Calderwood,* 112 N.H. 355, 358, 296 A.2d 910, 912 (1972)).

 In this case, we think that the master, by failing to consider all of the circumstances of the parties, overlooked the equities of the case. The plaintiff is disabled from multiple sclerosis. The defendant knew at the time of the divorce that the plaintiff had multiple sclerosis and that her condition would deteriorate, yet he willingly and with full knowledge signed a stipulation in which he agreed to pay the plaintiff twenty percent of his gross income, that under *no circumstances* would support fall below $500 per month, and that the payments would continue until the plaintiff's remarriage or the death of either party. While the terms of the stipulation are not controlling in this case, they are relevant circumstances to be considered by the court. *Healey, supra* at 621, 376 A.2d at 142 (court must consider all the circumstances of the parties); *cf. Morphy v. Morphy,* 112 N.H. 507, 509, 298 A.2d 580, 581 (1972) (the language of a permanent stipulation is a relevant factor). Further, the defendant earns a substantial income, in excess of $50,000 per year. There can be no question that the husband's ability to pay is a relevant factor in determining alimony in cases such as this. *Comer v. Comer,* 110 N.H. 505, 507, 272 A.2d 586, 587 (1970). Notwithstanding the relevant circumstances of this case, including the stipulation, the trial court ordered a termination of the plaintiff's alimony rights with a sweeping reference to the notion that alimony has rehabilitative goals. *Calderwood v. Calderwood,* 114 N.H. at 653, 327 A.2d at 706. While she acknowledged the existence of other factors, including the defendant's income, in her statement of facts, she did not discuss these factors in her analysis. Under the circumstances, the master's recommendation amounted to an abuse of discretion.

While the principle in *Calderwood* may in many cases be the controlling factor, as for example where the alimony recipient is of sound body and capable of establishing his or her own source of income, the "rehabilitation" goal is not controlling in the instant case. The plaintiff suffers from a progressive debilitating disease and, unfortunately, can entertain little hope for an independent lifestyle. The master herself admitted as much in her decree, noting that "[w]hile we may all hope that prospect [exists] for [p]laintiff,

the evidence is to the contrary; her physical condition is worse now than it was at the time of the last order in 1983." When faced with circumstances such as these, the trial court is not permitted simply to ignore them, sweeping them under the *Calderwood* rug. We reverse and remand the case for further proceedings and a decision made in the full light of all of the relevant circumstances as they exist in this specific case.

*Reversed and remanded.*

THAYER, J., did not sit; the others concurred.