Rockingham
No. 97-730

GAIL S. HOFFMAN

v.

WALTER E. HOFFMAN, JR.

April 21, 1999

*Shaines & McEachern, P.A.*, of Portsmouth (*Robert A. Shaines* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Linda S. Johnson* and *Catherine N. Lindgren* on the brief, and *Ms. Johnson* orally), for the defendant.

HORTON, J. The defendant, Walter E. Hoffman, Jr., appeals the divorce decree of the Superior Court (*Lynn*, J.) awarding the plaintiff, Gail S. Hoffman, alimony and nearly one-half of the known marital estate. We affirm.

The parties began living together in 1976, were married in 1981, separated in 1993, filed for divorce in 1995, and obtained a final decree of divorce in 1997. The plaintiff was fifty years of age and the defendant was seventy-five years of age at the time of the divorce hearing. There is one child from the marriage, born in 1986. Each party was previously married and divorced. The defendant has two daughters from his prior marriage, one of whom has multiple sclerosis and receives monthly financial assistance from him.

The plaintiff testified at trial that the parties enjoyed a relatively privileged marital lifestyle, which included extensive world travel and lengthy sailing trips. The defendant, a former pilot, earned an annual salary of $120,000 when the parties were married, but reached the mandatory retirement age approximately one year into the marriage. The defendant, however, receives substantial monthly income from a pension fund, social security benefits, retirement accounts, and the rental of realty. The plaintiff, a former flight attendant with two years of college level art study, earned a significantly smaller annual salary than her husband during the marriage. She testified that she contributed her resources, including the marital homestead, other real estate, savings, and personal efforts, to both the marriage and the defendant's business pursuits.

From 1986 through 1993, the plaintiff remained at home to care for the parties' child. After returning to work as a flight attendant, she earned a commercial pilot's license and was listed as a commercial pilot. The defendant paid for the requisite training and the listing fee. The plaintiff entered a pilot training program at KIWI International Airlines but was terminated for failing to progress in the program. Subsequently, the plaintiff accepted employment at a restaurant, where she presently earns approximately $9,600 annually. The plaintiff supplements this income by cleaning homes for approximately $2,000 annually and is attempting to start a business making decorative cakes. At the divorce hearing, the plaintiff testified that her age and lack of experience would prevent her from obtaining employment as a pilot. The plaintiff testified further that even if she could find a pilot position, a typical

entry level job with a commuter airline would garner approximately $15,000 annually and could require her to be away from home as many as eighteen days per month.

The trial court valued the known marital estate at nearly $1,500,000. The court found that the estate was comprised of the following assets: the marital homestead and furnishings, two condominiums, Pennsylvania real estate and furnishings, New Hampshire land, the plaintiff's individual retirement accounts and certificate of deposit accounts, three automobiles, the defendant's retirement accounts, and escrowed funds.

The court determined that the defendant had not been completely forthcoming in the disclosure of his assets. The defendant admitted maintaining an overseas account until September 1996, which he did not report on his federal tax returns. The plaintiff testified that the account had contained as much as $200,000. The court found that the defendant failed to provide a satisfactory explanation as to the disposition of the monies in the account, and that the defendant may have failed to fully account for his interest in a business venture.

The trial court concluded that an equal division of the known marital estate was justified. Since the plaintiff asked for less than half of the estate, the court granted her request. Additionally, the court awarded the plaintiff monthly alimony in the amount of $1,500 for seven years. The court granted the parties joint physical and legal custody of their child, and concluded that "in light of the fact that the property settlement and alimony awards made herein insure that each party will have sufficient income and assets to support [the child] when [the child] is in that party's custody, neither party is ordered to pay child support to the other party."

Before addressing the defendant's arguments, we set forth our standard of review. The trial court has broad discretion in determining and ordering distribution of property in the marital estate. *Rothbart v. Rothbart*, 141 N.H. 71, 74, 677 A.2d 151, 153 (1996). "Absent an abuse of discretion, we will not overturn the decision of the trial court in matters involving alimony and property distribution." *Id.*

The defendant first argues that the trial court's decision awarding the plaintiff monthly alimony of $1,500, for seven years, was not justified under RSA 458:19 (1992 & Supp. 1998). RSA 458:19 provides that a court may award alimony if: (1) the party in need lacks sufficient income, property, or both to provide for his or her reasonable needs, considering the marital lifestyle; (2) the payor is able to continue to meet his or her own reasonable needs, consid-

ering the marital lifestyle; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs, or is the custodian of a child, whose circumstances make employment outside the home inappropriate. In determining the amount of alimony to be awarded, a trial court must consider "the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; [and] the opportunity of each for future acquisition of capital assets and income." RSA 458:19, IV(b). Further, the court may consider the economic contribution of each party to the respective estates, as well as noneconomic contributions to the family unit. RSA 458:19, IV(d).

The defendant contends that the court improperly presumed that the parties' incomes should be equalized rather than awarding alimony based on a determination of need. We disagree. The trial court expressly stated in its decree, "The court has not attempted to completely equalize the parties' incomes. . . ."

■ Furthermore, the trial court made a sufficient finding of need under RSA 458:19.

After considering the factors specified in RSA 458:19 . . . ., the court hereby orders that the defendant pay . . . . alimony in the amount of $1,500 per month for a period of seven (7) years . . . . In making this determination, the court is mindful of (1) the substantial property settlement awarded to the plaintiff, (2) plaintiff's ability to obtain gainful employment, and (3) the shared custodial arrangement for [the child]. Nonetheless, given the facts that (1) this was a relatively long term relationship — the parties were married for twelve years prior to their initial separation and had been living together for five years before that — and (2) under the property distribution ordered herein the defendant has been awarded (a) more than 50% of the total assets and (b) assets that will produce far more monthly income than the assets awarded to the plaintiff, *the court finds that [the award of alimony] is necessary to provide for the reasonable needs of the plaintiff, taking into account the style of living to which the parties had become accustomed during the marriage.* The court notes that, even with this alimony award, the plaintiff's total monthly income will be only approximately $3,895.00, whereas the

> defendant's total monthly income (after subtracting the alimony payment) will be approximately $5,589.00. The court has not attempted to completely equalize the parties' incomes, in recognition of the fact that the plaintiff is considerably younger than the defendant, and thus has the potential to increase her earnings over time, whereas the defendant's earnings are likely to be fixed at present levels for the remainder of his life. The court also has taken into account the fact that the defendant provides some support for an adopted daughter from his first marriage, who suffers from multiple sclerosis.

(Emphasis added). The court considered the marital lifestyle, the property distribution, the parties' respective ages and earning power, their monthly incomes, the custody arrangement, the defendant's other support obligation, and the length of the marriage. Having deliberated on these factors, the court reasonably determined that the plaintiff was in need of alimony in the amount of $1,500 for seven years. We cannot say the court's finding of need was unsupported by the record.

The defendant argues that the trial court did not consider his ability to pay alimony. The trial court expressly considered the defendant's age, earning capacity, monthly income, and other support obligation. Implicit in the court's analysis is a determination that the defendant's monthly income will permit him to meet his reasonable needs, considering the marital lifestyle, despite having to pay alimony to the plaintiff. The defendant's contention in his reply brief that he cannot afford to pay alimony is based on his assertions at trial. The trial judge was "in the best position to evaluate the evidence, measure its persuasiveness and appraise the credibility of witnesses." *Gleason v. Elbthal Realty Trust*, 122 N.H. 411, 414, 445 A.2d 1104, 1105-06 (1982) (quotation omitted). The trial court, in the divorce decree, called the defendant's credibility into question. Accordingly, the trial court could have reasonably doubted the defendant's assertions concerning his ability to pay alimony.

The defendant points out that the seven-year alimony period coincides with the period before the parties' child will reach the age of majority. This does not indicate error; rather, it demonstrates that the trial court considered a pertinent circumstance in assessing the propriety of alimony. The alimony award was a factor in the court's decision not to order child support. The costs and time commitments associated with raising the child to majority will likely be significant for the plaintiff, even in the context of a shared

custody arrangement. Given the plaintiff's age, education, and employment background, the court could have reasonably concluded that the shared custody arrangement would impair her ability to independently sustain her reasonable needs, considering the marital lifestyle.

The defendant next argues that the trial court erred in dividing the marital estate. "[M]arital property is to be divided not by some magic formula but as the judge or master deems 'just.'" *Hanson v. Hanson*, 121 N.H. 719, 720, 433 A.2d 1310, 1311 (1981). "There is no fixed rule or mathematical formula to govern the court's action as the amount of the property to be allowed to a spouse depends upon the facts of the particular case." *Heath v. Seymour*, 110 N.H. 425, 433, 270 A.2d 602, 608 (1970).

The defendant received distribution of approximately fifty-three percent of the known marital estate. The defendant argues that numerous special circumstances entitle him to a substantially greater share of the marital estate, and therefore the trial court abused its discretion. We disagree. RSA 458:16-a (1992) creates a presumption that equal distribution of marital property is equitable. Indeed, "in the absence of . . . special circumstances the distribution should be as equal as the court can make it." *McAlpin v. McAlpin*, 129 N.H. 737, 740, 532 A.2d 1377, 1379 (1987) (quotation omitted). Among the special circumstances warranting unequal distribution are: (1) a short marriage; (2) a party's exclusive premarital possession of an asset that continues after the marriage; (3) a party's recent acquisition of an asset through a family relationship; (4) a party's need to provide a home for minor children; (5) the need to assure each party's future security; and (6) the fault of either party. *Id.*

The record supports the trial court's conclusion that the defendant failed to demonstrate special circumstances that would justify his receipt of additional assets. The marriage lasted more than a decade, both parties brought real estate and assets to the marriage, neither party argued that recent receipt of property through a family relationship was a factor, the parties share joint physical and legal custody of their child, the decree grants the defendant valuable real estate in Pennsylvania and New Hampshire, the decree assures the defendant sufficient income for his security, and fault was not at issue.

The trial court found that an equal distribution of the known marital estate was "fully justified" because of the length of the marriage and the fact that the plaintiff contributed time, energy, and money toward the defendant's business endeavors. The court

also took into account the defendant's unvalued pension fund and that the defendant may have failed to account for other assets. Additionally, the plaintiff testified that she interrupted her career for approximately seven years to assist in raising the parties' child, that she contributed her resources to the marriage, that her employment as a pilot was doubtful and impracticable, that she earned a relatively small income from two jobs, and that the parties enjoyed a "very high standard of living" during their marriage. *See* RSA 458:16-a, II (factors to consider before ordering unequal distribution). Thus, the record supports the trial court's nearly equal distribution of the known marital estate.

■ Because the court found that "[u]nder all the circumstances, and pursuant to RSA 458:16-a, II, . . . an equal distribution of property would be fully justified," we reject the defendant's argument that "[i]t is entirely unclear from the Decree whether the [court] concluded that an equal or unequal distribution was an equitable one." We also reject the defendant's argument that the court failed to consider his alleged special circumstances. Our review of the defendant's requests for findings and rulings contradicts this assertion. In his requests, the defendant advanced numerous special circumstances that were collectively denied by the court.

■ Next, the defendant asserts arguments relating to specific assets. First, the defendant contends that the court abused its discretion in valuing a retirement account at $225,000 when the evidence demonstrated that its value was approximately $203,000. Even if the record did not support the trial court's valuation, we conclude that the difference of some $22,000 was relatively insignificant because (1) the difference represented less than two percent of the $1,500,000 known marital estate, and (2) the plaintiff received forty-seven percent of the known marital estate, despite the court's finding that an equal distribution was fully justified. Any error was thus *de minimus*.

■ The defendant next contends that the trial court abused its discretion in awarding the plaintiff all of the furnishings in the marital homestead, while only granting him personal belongings which were stored in the garage. The trial court was required to "view the parties' real and personal property as a whole and propose an equitable distribution." *Azzi v. Azzi*, 118 N.H. 653, 656, 392 A.2d 148, 150 (1978). The defendant was awarded a valuable furnished residence in Pennsylvania, as well as a costly waterfront lot in New

Hampshire on which he planned to build a home to enjoy the shared custody arrangement more easily. The court could have reasonably found that awarding the parties one furnished residence each was equitable, especially in view of the shared physical custody determination. Also, evidence before the court showed that the furnishings in the Pennsylvania home possessed nine times the value of the furnishings in the marital home. Distributing the furnishings in the marital home to the plaintiff was within the court's discretion.

■ The defendant argues that he purchased the furnishings with money he earned prior to the marriage. Although the defendant had far greater financial resources from which to fund the acquisition of marital property, we again recognize that the plaintiff contributed her resources to the lengthy marriage as well. In this case, the fact that the furnishings in the marital home were purchased with money the defendant earned primarily before the marriage did not exempt those furnishings from inclusion in the marital estate for equitable distribution. *Cf. Rahn v. Rahn*, 123 N.H. 222, 225, 459 A.2d 268, 269 (1983).

■ The defendant next argues that the trial court abused its discretion by considering the defendant's pension in awarding alimony and distributing the known marital estate without first determining the pension's value according to *Hodgins v. Hodgins*, 126 N.H. 711, 497 A.2d 1187 (1985). We disagree. *Hodgins* establishes a means of equitably apportioning pension benefits. *See generally Hodgins*, 126 N.H. at 715-16, 497 A.2d at 1190. Since the plaintiff made no claim to the defendant's pension, apportionment under *Hodgins* was unnecessary. The defendant's monthly pension income, however, was a proper consideration in the court's decisions awarding alimony and dividing the marital estate. *See Baker v. Baker*, 120 N.H. 645, 648, 421 A.2d 998, 1001 (1980).

■ Finally, we address the defendant's argument that the trial court erred by considering the parties' period of premarital cohabitation in characterizing their relationship as long-term. The defendant argues that the trial court improperly tacked the five-year cohabitation period onto the twelve-year marriage period, tainting its alimony and property distribution determinations. We need not decide whether it was improper for the trial court to consider the parties' period of premarital cohabitation in awarding alimony and dividing the marital estate. Even without considering the five-year premarital relationship, the court could have regarded the twelve-year marriage as long-term for purposes of its support and property distribution rulings. *See Rahn*, 123 N.H. at 225, 459 A.2d at 269.

We have considered the defendant's remaining arguments and consider them to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.