Portsmouth Family Division
No. 98-487

### IN THE MATTER OF HERBERT N. FOWLER, JR. AND CHERYL K. FOWLER

December 14, 2000

*Marshall Law Office*, of East Kingston (*Keri J. Marshall* on the brief and orally), for the plaintiff.

*Bradshaw & Associates, P.C.*, of Exeter (*Mae C. Bradshaw* on the brief and orally), for the defendant.

BRODERICK, J. The defendant, Cheryl K. Fowler, appeals from the final order recommended by a Master (*Harriet J. Fishman*, Esq.) and approved by the Family Division (*DeVries*, J.) on the ground that the trial court abused its discretion in failing to award her permanent alimony. We reverse and remand.

The following facts were found by the trial court or are supported by the record. The parties were married in 1974 and moved to Iowa,

where the plaintiff attended chiropractic college. The plaintiff was employed part-time while in school, and the defendant, who had a high school diploma, worked as a telephone operator. The plaintiff's father paid his chiropractic college tuition. In 1977, after the plaintiff completed his schooling, the parties moved to Massachusetts where the plaintiff joined a family-owned chiropractic practice. Unable to find work, the defendant enrolled in a dermatology program at Northern Essex Community College, but did not complete the first semester.

There was no need for the defendant to work during her marriage. Indeed, her uncontroverted testimony was that her husband actively discouraged her from enrolling in school or maintaining employment outside the home. She did, however, eventually complete one class in typing and one introductory computer course. Between 1992 and 1996, the defendant was sporadically employed but never earned more than $2,000 a year. During the marriage, the defendant attended to various financial and household responsibilities and generally "took care of [her] husband."

The parties never enjoyed an extravagant lifestyle but had no difficulty satisfying their basic needs with ample reserve for extras. After they purchased their home in 1987, the parties substantially renovated it and installed an in-ground pool. They hired someone to assist with house cleaning, and the defendant took weekly music and tennis lessons. Between 1992 and 1997, the plaintiff earned between $130,000 and $160,000 per year from his chiropractic practice, and the parties lived in a comfortable home which was appraised in 1997 at $208,000.

At the time of their divorce in 1998, the parties were in their mid-forties, in good health, and had no children. The plaintiff was engaged in a profitable practice, and the defendant, although basically unemployed, was able-bodied and capable of employment. They had accumulated savings of $25,000. Immediately prior to the divorce, the defendant began working as a receptionist thirty-one hours per week at eight dollars per hour. She testified that she intended to begin working shortly as a switchboard operator at Merrimack College twenty hours per week at about ten dollars per hour. In addition, she planned to take tuition-free classes at the college to improve her skills. She acknowledged that she might be able to supplement her income by teaching tennis part-time, but was unable to forecast how much income it might generate. Her financial affidavit reflected monthly expenses slightly in excess of income. As a result, she was unable to pay for counseling which she began after the plaintiff filed for divorce.

At the time of the final hearing, the defendant had exclusive use and control over the marital home and the majority of the parties' personal property. She was also receiving $600 per week in temporary alimony.

The master's recommended order, as approved by the family division, provided for a slightly unequal division of property in favor of the defendant, due to the duration of the parties' marriage, the defendant's limited vocational skills and employment prospects, and her modest ability to acquire capital assets. See RSA 458:16-a, II (1992). The defendant received personal property, health and dental insurance coverage, the beneficial interest in a life insurance policy, and $110,994, comprised of a buy-out of her equity in the marital home, the remainder of a savings account, and the value of a life insurance policy. The plaintiff was awarded the marital home, including appliances and fixtures, his interest in the chiropractic business, the unknown value of beneficial interests in various family trusts, personal property, and approximately $23,000, comprised of the remainder of a savings account and the value of an IRA.

The decree provided the defendant with alimony of $300 per week for six years, on the condition that she enroll in college before January 1999, and complete her Bachelor's degree within six years. She was required to provide the plaintiff with written notification of course credits she received towards her degree. If the defendant chose not to enroll in college by January 1999, or withdrew after enrolling for more than two consecutive semesters within three years from the date of the decree, a diminished alimony schedule applied. Under this reduced plan, the defendant would receive only $300 per week for thirty months; $200 per week for the next twelve months; and $100 per week for the final twelve months. Finally, the decree provided that alimony would cease in the event the defendant remarried or co-habitated with an unrelated male for more than three months.

The trial court appropriately identified several statutory factors in determining the defendant's alimony: the defendant's need, the plaintiff's ability to pay, the parties' lifestyle during their marriage, and the defendant's employment prospects. See RSA 458:19, I (1992 & Supp. 1999). It also granted the plaintiff's request for a ruling of law that "the primary purpose of alimony is to encourage the recipient spouse to establish an independent source of income." See Calderwood v. Calderwood, 114 N.H. 651, 653, 327 A.2d 704, 706 (1974). Relying on this principle, the court declined to provide permanent alimony because the defendant "[was] able-bodied and, with some higher education, [could] be self-supporting." It awarded

the defendant temporary alimony to allow her "to enhance her skills while receiving financial assistance from [the plaintiff]." The defendant believed that she was entitled to permanent alimony and, contesting not only the duration of the award, but also its amount, filed a motion for reconsideration. The trial court denied her motion.

On appeal, the defendant argues that the court erred by adopting an outmoded presumption that alimony is awarded principally for the purpose of rehabilitation. In addition, she contends that the trial court abused its discretion in awarding alimony that failed to take into account the standard of living that the parties established during their marriage, the present and anticipated financial status of both parties, and legal fault. *See Madsen v. Madsen*, 109 N.H. 457, 460, 255 A.2d 604, 605 (1969).

■ "We sustain the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Town of Seabrook v. Vachon Management*, 144 N.H. 660, 661, 745 A.2d 1155, 1157 (2000) (quotation and citation omitted). The trial court has broad discretion in determining and ordering the distribution of property and the payment of alimony in fashioning a final divorce decree. *See Hoffman v. Hoffman*, 143 N.H. 514, 517, 727 A.2d 1003, 1006 (1999). Absent an abuse of discretion, we will not overturn its ruling or set aside its factual findings. *See id.*

Our statute provides that alimony shall be awarded for either a definite or indefinite period of time if

> (1) the party in need lacks sufficient income, property, or both to provide for his or her reasonable needs, considering the marital lifestyle; (2) the payor is able to continue to meet his or her own reasonable needs, considering the marital lifestyle; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs . . . .

*Id.* at 517-18, 727 A.2d at 1006; *see* RSA 458:19, I. With regard to calculating the alimony award, RSA 458:19, IV(b) (Supp. 1999) provides, in pertinent part:

> In determining the amount of alimony, the court shall consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded . . ., vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party.

In addition, the court may also consider the non-economic contribution of each party to the family unit. *See* RSA 458:19, IV(d) (Supp. 1999).

▮ ▮ The primary purpose of alimony is rehabilitative. *See Tishkevich v. Tishkevich*, 131 N.H. 404, 407, 553 A.2d 1324, 1326 (1989). "Rehabilitative" alimony is based on the theory that modern spouses are equally able to function in the job market and to provide for their own financial needs. *See* 3 A. RUTKIN, FAMILY LAW AND PRACTICE § 35.02[2], at 35-8, 35-9 (2d ed. 2000). Alimony, therefore, is designed "to encourage the recipient to establish an independent source of income." *Tishkevich*, 131 N.H. at 407, 553 A.2d at 1326. The express language of our alimony statute, however, indicates that alimony awards need not be rehabilitative in all cases. *See* RSA 458:19, I (providing for alimony awards that are "either temporary or permanent, for a definite or indefinite period of time"); RSA 458:19, IV (mandating consideration of multiple factors when calculating the amount of the alimony award). We have held that the rehabilitative principle is not controlling where the supported spouse suffers from ill health and is not capable of establishing her own source of income. *See Henry v. Henry*, 129 N.H. 159, 162, 525 A.2d 267, 269 (1987). In addition, we find rehabilitative awards inadequate where supported spouses in long-term marriages lack the requisite job skills to independently approximate the standard of living established during the marriage. *Cf. Healey v. Healey*, 117 N.H. 618, 620-21, 376 A.2d 140, 142-43 (1977) (rejecting husband's argument to terminate alimony where former wife's independent source of income did not provide standard of living established during marriage).

Although we find that under the facts of this case, the trial court did not abuse its discretion in awarding rehabilitative alimony, it is apparent from a fair reading of the record that the trial court did abuse its discretion in making such an insubstantial award. The defendant has a very modest job history, and it is unlikely that she will obtain a job which will allow her to maintain independently a standard of living comparable to that enjoyed during her marriage. During her marriage, the defendant was accustomed to a standard of living that, although not extravagant, afforded the parties "an ample reserve for the extras." By contrast, the defendant's total monthly income under the final decree, including alimony payments, is approximately $2,000. Once divorced, the supported spouse "is not necessarily required to adjust her standard of living to fit the income [] she can earn for herself." *Id.*

> It is essential that the amount of alimony awarded be sufficient to cover the [supported spouse's] needs, within the limits of the [supporting spouse's] ability to pay. The [supported spouse's] needs are not, however, limited to the barest necessities. The award should also take into account the standard of living established during [the] marriage and the financial status of both plaintiff and defendant.

*Murphy v. Murphy*, 116 N.H. 672, 675, 366 A.2d 479, 482 (1976) (quotation and citations omitted). The alimony award in this case cannot stand because at present, it is insufficient to put the defendant in a position to enjoy the standard of living to which she was long-accustomed in her marriage and also because it is inadequate to bridge the expectation that the defendant will become self-sufficient. *See id.*

■ Our judgment is supported by the consideration of several other factors, including the length of the marriage, the defendant's non-economic contributions to the marriage, and the husband's ability to pay. *See id.* At the plaintiff's behest, the defendant refrained from entering the workplace or furthering her education for nearly all of their twenty-four year marriage and committed her energy to the maintenance of their home and finances. In addition, although "the husband's ability to pay is a vital factor to be considered by the court," *Calderwood*, 114 N.H. at 653, 327 A.2d at 706, this is not a case where "the trial judge has the problem of dividing the meager loaves and fishes without the aid of a miracle." *Comer v. Comer*, 110 N.H. 505, 507, 272 A.2d 586, 587 (1970). While the plaintiff conservatively estimated his current monthly earnings at $11,000, his federal tax returns for the previous four tax years reflect a significantly higher monthly income. It is uncontested, therefore, that the plaintiff has more than ample means to provide the defendant with financial support consistent with the quality of life established during their marriage. *See Healey*, 117 N.H. at 620-21, 376 A.2d at 142.

The defendant is entitled to a more equitable alimony award — both in amount and duration. After nearly a quarter century of marriage during which the defendant committed herself to domestic responsibilities at her husband's urging and was discouraged from acquiring the educational and market skills necessary for future self-sufficiency, the court abused its discretion by leaving the defendant at risk while the plaintiff continues to enjoy a lifestyle comparable to the one the parties had during their marriage. While permanent alimony may not be required, the court's award is too

522

parsimonious. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.