NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

3rd Circuit Court-Conway Family Division
No. 2017-0238


IN THE MATTER OF STEVEN HOYT AND LESLEY HOYT

Submitted:  March 8, 2018
Opinion Issued:  October 3, 2018


Steven Hoyt, self-represented party, by brief.


Lesley Hoyt, self-represented party, by brief.


LYNN, C.J.  The petitioner, Steven Hoyt, appeals an order of the Circuit Court (Pendleton, J.) reinstating his alimony obligation to the respondent, Lesley Hoyt, and granting an upward adjustment to his child support payments.  We affirm.

The following facts are found in the record.  The respondent and the petitioner divorced in 2010 after an 18-year marriage.  In 2013, the respondent filed a post-divorce petition seeking, among other things, an award of alimony.  By order dated October 1, 2014, the Circuit Court (Albee, J.) awarded the respondent "temporary alimony for a period not to exceed 18 months . . . in the amount of $150 monthly."  According to the trial court, the award was necessary to provide the respondent, who was suffering from tendonitis at the time, with "some temporary assistance" until she was able to restore her health and work a greater number of hours.

The parties have three children.  The oldest two are currently over the age of 18.  The oldest child recently withdrew from college and moved back in

with the respondent due to a medical condition. The middle child attends college but lives with the respondent while school is not in session. The parties' youngest child is in high school, and primarily resides with the respondent.

On May 12, 2016, the petitioner filed a request in the trial court seeking a reduction to his child support obligation because the middle child had recently turned 18. However, in June 2016, prior to receiving approval from the trial court, the petitioner reduced the amount of his monthly child support payment. Thereafter, the respondent requested alimony. Prior to the final hearing, the respondent filed a one-page proposed order seeking to increase child support for the youngest child to $1,100 per month and requesting alimony in the amount of $600 per month. The petitioner requested that the current child support payment be reduced to $982 per month. Accompanying the petitioner's proposed order was a detailed request for factual findings along with legal citation in support of his position.

On January 25, 2017, the court held a final hearing to resolve these issues. The respondent testified at that hearing that the parties' oldest child had to drop out of school due to a medical condition that caused her joints to become easily dislocated and made it difficult for her to get out of bed without assistance. The oldest child also suffered from a neuropathy that caused severe pain and joint stiffness. The respondent explained that she regularly drives her to Dartmouth-Hitchcock Hospital for treatment. The respondent also explained that she is paying for the parties' middle child to go to college and otherwise provides him with financial support. As for the parties' youngest child, the respondent testified that increased costs of extracurricular activities justify an upward deviation in child support. Specifically, the youngest child had recently been invited to go to Disney World with her dance team. According to the respondent, "the cost of the trip alone is $1600," and the additional cost of costumes and other provisions will increase the total bill to $3,000. The respondent stated that the petitioner refused to contribute any money toward the cost of the trip. The youngest child is also in the school band, and the respondent testified that she is responsible for purchasing instruments and uniforms. As a final point, the respondent explained that she had become delinquent with "all" of her credit cards after the petitioner reduced his child support payment, and these bills are "now in collections."

The petitioner argued that the respondent's request for alimony was untimely under New Hampshire law. Specifically, the petitioner took the position that the original alimony award was only "temporary," and thus could not be reinstated because the current request was made more than five years from the original divorce decree. The petitioner also argued that his child support obligation should not be increased to fund the youngest child's extracurricular activities because his "support pays for that already" and "$3,000 is a lot of money" for a trip that was merely "optional."

2

On March 13, 2017, the trial court issued an order renewing alimony and granting an upward adjustment to the petitioner's child support obligation. The trial court rejected the petitioner's argument that the original alimony award was "temporary," concluding that it was a "permanent award for a set period of time." Moreover, the trial court reasoned that the respondent's current living situation — taking care of three children, one of whom was suffering from "debilitating medical issues" — coupled with her lack of sufficient income, warranted an alimony award of $200 per month for 12 months. As for child support, the trial court found that the respondent's financial difficulties, coupled with the "extraordinary costs related to [the youngest child's] after school activities," warranted a minor upward adjustment to $1053 per month in order to meet the youngest child's needs. The petitioner's motion to reconsider was denied, and this appeal followed.

"On appeal, we will affirm the findings and rulings of the trial court unless they are unsupported by the evidence or legally erroneous." In the Matter of Nyhan and Nyhan, 147 N.H. 768, 770 (2002); In the Matter of Plaisted & Plaisted, 149 N.H. 522, 523 (2003). We afford broad discretion to the trial court in determining and ordering child support and alimony. See In the Matter of Johnson & Johnson, 158 N.H. 555, 558 (2009); In the Matter of Nassar & Nassar, 156 N.H. 769, 772 (2008). "Accordingly, absent an unsustainable exercise of discretion, we will not overturn its factual findings." Nassar, 156 N.H. at 772. "However, we review its interpretation of the law de novo." Id.

The petitioner argues that the trial court exceeded its statutory authority to award additional alimony. Specifically, he argues that the original award was "temporary" and therefore, under RSA 458:19, could only be adjusted within five years of the original divorce decree. Relying on Judge Albee's use of the phrase "temporary alimony" in the 2014 order, the petitioner argues that Judge Albee clearly intended the award to be "subject to the 5 year limit from the date of the decree."

Alimony is a statutory creature governed by RSA 458:19 (2004) (amended 2018). See 27B C.J.S. Divorce § 501, at 85-87 (2016). RSA 458:19 authorizes the trial court to consider a request for post-divorce alimony in two separate circumstances. One situation arises when a party seeks alimony for the first time after divorce. See RSA 458:19, I. In that scenario, the statute authorizes the trial court to "make orders for the payment of alimony to the party in need of alimony, either temporary or permanent, for a definite or indefinite period of time, if the motion for alimony payments is made within 5 years of the decree of nullity or divorce . . . ." Id. The other situation occurs when "an order for permanent alimony for a definite period of time" has been previously granted by the trial court. RSA 458:19, VII. Under the statute, "such [an] order may be renewed, upon the petition of either party, provided that such petition is made within 5 years of the termination date of the permanent alimony order." Id.

3

At the time of the trial court's order, the statute did not define the terms "temporary" or "permanent." The trial court reasoned that "temporary alimony" means an award granted "as part of the temporary orders . . . prior to a final order being issued." In the trial court's view, this was "the only interpretation that gives meaning to the words temporary and permanent in light of RSA 458:19, [VII], and its reference to permanent alimony for a defined period." The trial court explained that "while [the alimony granted in 2014] may have been for a temporary period," it "was awarded post final decree . . . for the defined period of 18 months, meaning it was permanent for a set period of time under" the statute.

The petitioner argues that our decisions in In the Matter of Fowler and Fowler, 145 N.H. 516 (2000), and Nassar provide the requisite interpretations for temporary and permanent alimony. We disagree. In both Fowler and Nassar, we simply recognized that while the primary purpose of alimony is rehabilitative, there are certain factual scenarios that override the rehabilitative principle. See Nassar, 156 N.H. at 777; Fowler, 145 N.H. at 520. We did not specifically define what constituted "temporary" or "permanent" alimony for purposes of the statute.

"Strictly speaking, temporary alimony is the allowance which a spouse may be compelled to pay the other spouse pendente lite, in order to enable the other spouse to maintain or defend the divorce action." 27B C.J.S., supra § 504, at 90. Authority from other states explains that "[t]he purpose of temporary alimony is to furnish a needy spouse with funds sufficient to prevent the spouse from becoming a public charge while his or her rights are being adjudicated." Burtoff v. Burtoff, 418 A.2d 1085, 1092 (D.C. 1980); see Belfiglio v. Belfiglio, 469 N.Y.S.2d 978, 979 (App. Div. 1984) ("Temporary maintenance is designed to insure that the needy spouse is provided with sufficient funds to meet his or her reasonable needs pending trial."). By contrast, "[p]ermanent alimony is an award made in conjunction with the determination of the merits of the action." 27B C.J.S., supra § 505, at 92; see Wilson v. Superior Court, 189 P.2d 266, 269 (Cal. 1948) (classifying permanent alimony as "an award made in conjunction with the determination of the merits of the action"). Permanent alimony need not, as the petitioner suggests, continue in perpetuity. See DeGrazia v. DeGrazia, 741 A.2d 1057, 1059-60 (D.C. 1999). Instead, the trial court retains the discretion to set a durational limit to the award based on the facts of the particular case, so long as its decision is reasonable. See Gress v. Gress, 743 N.W.2d 67, 80-82 (Neb. 2007); see also 27B C.J.S., supra § 601, at 231-32 ("[G]enerally, the duration of an order is for the determination of the court in the exercise of its discretion based on the circumstances of the particular case and consideration of statutory factors, so long as it is reasonable."). We therefore agree with the trial court's interpretation that "temporary" in the context of alimony connotes the procedural posture of the award and not the length. In other words,

4

"temporary," as used in RSA 458:19, I, means an award that is made before the trial court's final determination concerning a party's alimony obligation.

Our conclusion is in line with recent amendments to RSA 458:19, which added a definitional section to the statute. See Laws 2018, 310:1. Of note, the amended statute defines "temporary alimony" as the "periodic support payments to or on behalf of a spouse while a case is pending and ending on the effective date of the divorce, legal separation, or annulment." Id. Moreover, the amendment replaces "permanent alimony" with the phrase "term alimony," which it defines as the "periodic payments made to a spouse or former spouse after the effective date of the final decree." Id. These new definitions draw the same distinction recognized by case law, and are consistent with our interpretation in this case.

Next, the petitioner argues that the trial court incorrectly "modified the original award without proof of a substantial change in circumstances." In the petitioner's view, it was improper for the trial court to consider that the respondent was taking care of adult children when making its decision concerning alimony. The petitioner's argument relies upon an inapplicable standard of proof. It is true that a party seeking "[t]o obtain an order modifying a support obligation . . . must show that a substantial change in circumstances has arisen since the initial award, making the current support amount either improper or unfair." Laflamme v. Laflamme, 144 N.H. 524, 527 (1999). However, this standard does not apply to a request to renew an expired award, which is what the respondent sought here. See In the Matter of Lyon & Lyon, 166 N.H. 315, 316 (2014). Rather, in the latter scenario, we have articulated that "the burden is upon the party in whose favor the order is to run to establish that justice requires a renewal or extension, and if so, what justice requires as to amount, in the light of all the circumstances then existing." Id. at 321 (quotation, brackets, and ellipsis omitted).

Moreover, "the trial court must consider all of the circumstances of the parties" in reaching its decision. Henry v. Henry, 129 N.H. 159, 161 (1987) (quotation omitted); see Taylor v. Taylor, 108 N.H. 193, 195 (1967). Consideration is not limited to the statutory factors — as suggested by the petitioner. Cf. Henry, 129 N.H. at 162 (explaining that, while not controlling on the overall outcome of the case, the terms of a private stipulation between the parties was a relevant circumstance to be considered by the trial court). The respondent testified that caring for the oldest child has been both financially draining and time consuming. The impact of this responsibility is compounded by the respondent's other financial obligations and limited financial means. It was appropriate for the trial court to consider these facts when making its decision. See Hoffman v. Hoffman, 143 N.H. 514, 519-20 (1999). In sum, nothing appears in the record which would indicate that the trial court misapplied the burden of proof or failed to consider all the relevant circumstances, and we cannot say it unsustainably exercised its discretion in

5

ordering the renewal of alimony payments.  Healey v. Healey, 117 N.H. 618, 622 (1977).[1]

As to the child support adjustment, the petitioner asserts that the trial court misapplied the statutory factors to this case.  Specifically, he argues that the trial court could not consider the youngest child's extracurricular activities because extracurricular activities are already included in the child support guidelines.

"New Hampshire's child support guidelines are codified in RSA chapter 458-C."  Plaisted, 149 N.H. at 524.  "The legislature adopted them in order to establish a uniform system to determine the amount of child support to be awarded, to resolve inequities in child support orders and to comply with federal law."  Id.  The statutory framework vests the trial court "with the ultimate responsibility for determining and safeguarding the best interests of children."  In the Matter of Laura & Scott, 161 N.H. 333, 337 (2010); see RSA 458-C:1 (2004).  As such, "the guidelines shall apply in all child support cases, including orders modifying an existing support order."  Giles v. Giles, 136 N.H. 540, 543 (1992); see RSA 458-C:4, I (2004).  "There is a 'rebuttable presumption' that application of the guidelines in a particular case will establish the correct amount of child support."  Id. (quoting RSA 458-C:4, II).  "This presumption may be rebutted only through a 'written finding or a specific finding by the presiding officer on the record that the application of the guidelines would be unjust or inappropriate in a particular case.'"  Giles, 136 N.H. at 543-44 (quoting RSA 458-C:4, II).  In that situation, RSA 458-C:5 authorizes the trial court to "adjust its application of the guidelines if it is shown by a preponderance of the evidence that special circumstances exist."  Id. at 544 (quotation omitted).

The petitioner argues that our decision in In the Matter of Coderre & Coderre, 148 N.H. 401 (2002), superseded in part by statute as recognized in In the Matter of Regan & Regan, 164 N.H. 1 (2012), controls the outcome of this case.  In Coderre, the father was ordered to pay "seventy-eight percent of [the children's] extracurricular activity expenses" in addition to his support obligations under the guidelines.  Coderre, 148 N.H. at 402-03.  We reversed, holding "that such expenses are included in the parties' total support obligation," and could therefore not constitute a separate support obligation.  Id. at 406.  The petitioner construes our holding in Coderre to mean that an increase in the cost of extracurricular activities can never form the basis for an upward deviation.  However, we have explained that "[o]ur holding in Coderre . . . was not based upon the facts underlying the party's request for

---

[1] To the extent the petitioner challenges the respondent's credibility "and the accuracy of her expense and income figures," these "are questions to be resolved by the trial court."  Healey, 117 N.H. at 622.  On the record before us, we cannot say that the trial court's determinations were erroneous.  See Nassar, 156 N.H. at 772.

6

extracurricular expenses." In the Matter of Donovan & Donovan, 152 N.H. 55, 60 (2005). "Rather, we examined the structure and purpose of RSA chapter 458-C to determine what expenses are part of general support under the guidelines." Id. Thus, "[a]lthough extracurricular activities are included in basic guidelines support, ongoing extraordinary education expenses may constitute special circumstances that justify deviation from the guidelines." Id. (emphasis added); see, e.g., In the Matter of Arabian & Squillante, 151 N.H. 109, 112 (2004) (explaining that the trial court on remand may consider whether extracurricular activities created a special circumstance "that would justify deviating from the guidelines").

Furthermore, based on the record before us we cannot say that the trial court unsustainably exercised its discretion by granting an upward deviation. Laura & Scott, 161 N.H. at 335. Here, the trial court found that "the extraordinary costs relating to [the youngest child's] after school activities" warranted a minor upward deviation to the support award. Given these facts, the trial court found that it was in the interest of justice to have the parties equally share this obligation to provide the "best possible outcome for" the youngest child. See In the Matter of Carr & Edmunds, 156 N.H. 498, 501 (2007) (noting that one goal of the child support guidelines is "to ensure that both the custodial and non-custodial parents share in the support responsibility for their children, according to the relative percentage of each parent's income" (emphasis added)).[2] Moreover, this result furthers the other statutory purpose of child support, which is to "minimize the economic consequences of divorce to children." In the Matter of Jerome & Jerome, 150 N.H. 626, 630 (2004) (quotation and brackets omitted); see 27C C.J.S. Divorce § 1149, at 326 (2016) (noting that child support statutes seek to provide the child "with a standard of living enjoyed by the family prior to the divorce and by the noncustodial parent after the divorce, so as to provide the level of support that the child presumably would have enjoyed but for the divorce").[3]

While the petitioner argues that the respondent's financial affidavit is both incomplete and inaccurate, and thus the trial court's reliance on it was erroneous, he failed to include the affidavit in the record on appeal. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) ("It is the burden of the appealing party . . . to provide this court with a record sufficient to decide [the] issues on appeal . . . ."). Our review is therefore limited to the record before us,

---

[2] The petitioner's contention that the trial court improperly "made the arguments . . . in its summary order on [the respondent's] behalf" is misplaced. The trial court was obligated to "make a written finding as to why a special circumstance pursuant to RSA 458-C:5 justifies an adjustment from the child support guidelines to avoid an unjust or inappropriate result" prior to deviating from the guidelines. In the Matter of Forcier & Mueller, 152 N.H. 463, 465 (2005).

[3] While the petitioner argues that the trial court wrongfully considered college costs in computing child support, the record does not support this claim. Instead, it shows that, at most, the trial court considered as relevant the fact that while not in college, the two older children lived with the respondent.

from which we conclude that the trial court sustainably exercised its discretion.  <u>Nassar</u>, 156 N.H. at 772.

<u>Affirmed</u>.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.