Hillsborough,
No. 5868.
No. 5953.

EVERETT ADAMS *v.* DANIEL J. SULLIVAN.

EVERETT ADAMS *v.* DANIEL J. SULLIVAN.

January 30, 1970.

*Lincoln, Edwards & Mazerolle* ( *Mr. Charles J. Lincoln* orally ), for the plaintiff.

*Clancy & O'Neill*, for the deputy sheriff as intervenor, filed no brief.

*Sullivan, Gregg & Horton* and *Sweeney & Sweeney* ( *Mr. James L. Sullivan* orally ), for the defendant.

KENISON, C. J. The issues raised in these malpractice actions are whether a sheriff's return of process is conclusive, whether service was in compliance with the statute ( RSA 510:2 ) and whether the statute ( RSA 508:10 ) permitting a new action within one year after judgment, applies to a suit dismissed for defective service of process.

The first malpractice action was instituted by a writ dated January 11, 1968 and the sheriff's return of service on January 17, 1968 stated that service was made on the defendant by leaving an attested copy at his abode on 23 Scott Avenue in the city of Nashua. The defendant received the writ on February 3, 1968 and had actual notice of the suit. What in fact happened appears from the record:

"When the deputy sheriff received the instant writ on or about January 12, 1968, he went to Doctor Sullivan's office at 10 Prospect Street, in Nashua, and was informed by Miss Katherine Sullivan, the doctor's nurse, who was in charge of the office at the time, that Doctor Sullivan was not at home but was in Florida. Miss Sullivan told the sheriff that he could leave the writ with her and that she would take it to the doctor's home the next day. The sheriff then gave the writ to Miss Sullivan.

"A day or so later, the sheriff, believing that the writ should be left at Doctor Sullivan's abode, telephoned Miss Sullivan and told her that he was coming to the office to pick up the writ so that he could leave it at Doctor Sullivan's home. Miss Sullivan told the sheriff that Philip Whitney, the doctor's brother-in-law, had a key to the doctor's home and that she would have Mr. Whitney take the writ to the house. Miss Sullivan telephoned Mr. Whitney about the writ, and he took it to the house along with the doctor's personal mail. When Doctor Sullivan returned to Nashua from Florida on February 3, 1968, Miss Sullivan, when talking with the doctor's wife, was advised by her that the writ was found when Doctor Sullivan arrived home. The deputy sheriff never served a writ on Doctor Sullivan before the one·in question and Miss Sullivan never accepted a writ for Doctor Sullivan prior to this one. The sheriff made the return in question on the date that he left the writ with Miss Sullivan on the understanding that she would see that it would be taken to Doctor Sullivan's house."

The defendant's motion to quash the writ and dismiss the action on the ground that service was made on an unauthorized agent at his place of business and not at his abode was granted by *Flynn*, J. on July 22, 1968 and the plaintiff's exceptions were reserved and transferred to this Court. The plaintiff then brought another malpractice action against the defendant alleging the same facts by a writ dated November 5, 1968 and defendant's motion to abate was granted by *Grant*, J. The plaintiff's exception was reserved and transferred to this Court and both cases were argued together.

The common-law rule that a sheriff's return in the service of process is conclusive and not controvertible has more history in its favor than it does either logic or common sense. The cases that have applied it in this jurisdiction — and there are many that have not — frequently rely on a statement in *Lewis* v. *Blair*, 1 N. H. 68, 70. That case pointed out that if a sheriff's proceedings could be invalidated by calling in question the truth of his return, "extreme inconvenience . . . mischief . . .' and much uncertainty in judicial proceedings would be the consequence." *Clark* v. *Bradstreet*, 99 N. H. 55, 57, 104 A. 2d 739. Time has eroded this common-law rule both here as well as in a majority of states and it is generally recognized today that the rule, which preferred fiction over fact, is inconsistent with modern procedure and practice. *Pike* v. *Scribner*, 101 N. H. 314, 142 A. 2d 154; *Bissonnette* v. *Alpine, Inc.*, 96 N. H. 419, 420, 77 A. 2d 586; *Clough* v. *Moore*, 63 N. H. 111, 113. See Restatement, Second, Conflict of Laws *s.* 25, *comment* e ( P. O. D. 1967 ). The sheriff's return of service is entitled to a presumption of correctness which the contestant must overcome by evidence but it is not conclusive. The present case is clearly not a case involving fraudulent service of process but such service can also be a problem as experience has demonstrated elsewhere and this is an additional reason why the sheriff's return should not be conclusive. Abuse of Process: Sewer Service, 3 Colum. J. of L. & Social Prob. 17 ( 1967 ). The Trial Court was correct in its ruling that the defendant could question the "correctness of the return" in this case.

RSA 510:2 reads in pertinent part as follows: " . . . All writs and other processes shall be served by giving to the defendant or leaving at his abode an attested copy thereof, . . ." If this statute were new it could be argued that a defendant has been served when process has been given him or has been left at his

abode regardless of how it arrived. *Krabill* v. *Gibbs*, 14 Ohio St. ( 2d ), 235 N. E. 2d 514; *Nowell* v. *Nowell*, 384 F. 2d 951 ( 5th Cir. 1967 ). Traditionally, however, we have required a more exacting standard in this state as *Rogers* v. *Buchanan*, 58 N. H. 47 and *Duncan* v. *McDonough*, 105 N. H. 308, 199 A. 2d 104 demonstrate. This is due in part to the fact that the statute ( RSA 510:2 ) is to be read in conjunction with RSA 509:3 and RSA 104:5 which indicate that writs are addressed to the sheriff in contemplation that he will serve them. *Demers* v. *Bisbee*, 106 N. H. 354, 211 A. 2d 416. This does not mean that every irregularity will invalidate the service. Thus in *Davis* v. *Cray*, 109 N. H. 181, 183, 246 A. 2d 97 the writ was actually served by the sheriff and received at the defendant's abode even though it was not an attested copy as the statute required. Inasmuch as the writ was a true copy and actually received by the defendant it was held that the omission of the officer's signature was harmless. On the basis of existing precedent we sustain the Trial Court's ruling that the service of process in this case was defective and not in compliance with RSA 510:2.

After the first malpractice action was dismissed for improper service and an appeal to this court was pending, the plaintiff brought another action which was abated on defendant's motion. Defendant contends this was correct relying on *Gamsby* v. *Ray*, 52 N. H. 513. That case has been modified, questioned or distinguished in subsequent cases and the present rule is that a second suit is not to be dismissed as vexatious if justice requires otherwise. *Hoyt* v. *Company*, 80 N. H. 27, 31-32, 113 A. 219; *Dolber* v. *Young*, 81 N. H. 157, 159, 123 A. 218; *Pacific & Atlantic Shippers Inc.* v. *Schier*, 106 N. H. 69, 70, 205 A. 2d 31. Where it is doubtful whether plaintiff can secure his rights in the original suit, justice does not necessarily require abatement of the second suit for the same cause of action and by consolidation of suits or some other convenient procedure the rights of both parties may be protected and afford them an opportunity to litigate the merits of the controversy. *Tinkham* v. *Railroad*, 77 N. H. 111, 112, 88 A. 709.

RSA 508:10 reads as follows: "Second Suit. If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment." This is a saving

statute designed to insure a diligent suitor the right to a hearing in court until he reaches a judgment on the merits. Such statutes have received a liberal interpretation here as well as elsewhere. *Milford Quarry &c. Co.* v. *Railroad,* 78 N.H. 176, 97 A 982; *Gaines* v. *New York,* 215 N. Y. 533, 109 N. E. 594; *Giles* v. *Rodolico,* 51 Del. 143, 140 A. 2d 263. In *Hughes* v. *Hebert,* 106 N. H. 176, 207 A. 2d 432 it was held that RSA 508:10 was designed to extend and not abridge a plaintiff's opportunity to receive a hearing on the merits. Consequently this saving statute applies to defective service of process such as occurred in the first malpractice suit.

That the saving statute should begin to run from the date of affirmance on appeal of a judgment or decision adverse to the plaintiff and not from the date of the adverse judgment or decision in the Trial Court is the rule followed by an overwhelming majority of cases. Annot. 79 A.L.R. 2d 1270, 1276. We follow that rule because the plaintiff should not be required by taking an appeal to risk his privilege of renewing his action.

Where the defendant has notice of the suit, the second suit could be stayed pending the outcome of the appeal on the first one. But both parties are entitled to a procedure that will allow them to litigate the merits of the controversy. The spirit and purpose of the saving statute ( RSA 508:10 ) will be served by not abating the second suit while the appeal on the first is pending. Accordingly we sustain the dismissal of the first suit, reverse the abatement of the second suit and remand the case for a trial on the merits.

*Remanded.*

All concurred.