Lebanon Family Division
No. 2001-531

IN THE MATTER OF ANNE C. SUTTON AND JOHN E. SUTTON, JR.

Argued: October 9, 2002
Opinion Issued: December 17, 2002

*Clauson & Atwood*, of Hanover (*K. William Clauson* on the brief and orally), for the petitioner.

*McSwiney, Semple, Bowers & Wise, P.C.*, of Concord (*Ronna F. Wise* and *Patrick J. Sheehan* on the brief, and *Ms. Wise* orally), for the respondent.

BRODERICK, J. The petitioner, Anne C. Sutton, appeals from the final divorce decree recommended by a Master (*Larry B. Pletcher*, Esq.) and approved by the Family Division (*Cyr*, J.). We affirm.

The parties were married in 1970 and are the parents of three adult children. During the marriage, the respondent, John E. Sutton, Jr., attended medical school and, since 1981, has been employed as a surgeon by Dartmouth-Hitchcock Medical Center (medical center). The petitioner has a two-year nursing degree but has not worked since the birth of the parties' first child in 1976, and her nursing license has expired.

In August 2000, the petitioner filed a libel for divorce. After a two-day hearing in April 2001, the trial court granted a divorce on the ground of the respondent's adultery. *See* RSA 458:7 (Supp. 2002). At the time of the hearing, the parties were both fifty-two years of age. The respondent's annual salary was $252,473 and was expected to increase to $415,621 in 2013 when he reaches age sixty-four. In addition, he participated in three retirement plans with the medical center: a 401(k) plan, which was valued at $637,000 in 2001; a defined benefit pension plan; and a non-qualified supplemental retirement plan.

The defined benefit pension plan is "qualified" to receive tax benefits under federal law; thus, the annual compensation taken into account to calculate pension benefits cannot exceed a certain sum. *See* 26 U.S.C.A. § 401(a)(17) (2002). The federal compensation limit in 2001 was $170,000. As a result of this limit and in order to meet its promise to its employees about pension benefits, the medical center established a supplemental retirement benefit, which is paid annually to plan participants and is subject to taxation. In 2001, the respondent received over $9,000 in supplemental benefits. In 2004, at age fifty-five, he will receive over $24,000 per year in supplemental benefits.

The trial court awarded the petitioner the marital home, which had an estimated equity of $300,000. The court found the petitioner capable of renewing her nursing license and obtaining a position with a starting annual salary of $21,000. Taking this into consideration, it awarded her alimony of $5,250 per month until February 2002 and $4,000 per month thereafter, payable until the respondent retires or the petitioner receives monthly benefits from her share of the defined benefit pension plan, whichever occurs first.

The trial court awarded the respondent the first $200,000 of the 401(k) account and divided the balance equally between the parties. With regard to the respondent's defined benefit pension plan, the court ordered that the respondent prepare a qualified domestic relations order (QDRO) "assign[ing] to the Petitioner 50% of the actual retirement proceeds calculated in accordance with a *Hodgins* formula based on service beginning in 1981 (initial employment under the plan) and ending on August 28, 2000." *See Hodgins v. Hodgins*, 126 N.H. 711 (1985) (superseded on other grounds by RSA 458:16-a, I (1992)). To the petitioner's share, the court added fifty percent of the supplemental retirement benefits that were "held back" or not paid from 1996 to 2001. The court did not award the petitioner any other share of the respondent's future supplemental retirement benefits, distinguishing them from the future increases discussed in *Rothbart v. Rothbart*, 141 N.H. 71 (1996). It found that increases in the respondent's supplemental benefits are not strictly based upon prior years of service but, rather, are based upon the participant's age and are characteristic of rewards for ongoing service. Additionally, the court ordered the respondent to pay for remaining educational expenses, health insurance and uninsured medical and dental expenses for the parties' two youngest children, and divided equally the cash value of the respondent's life insurance policies and the parties' mutual funds.

On appeal, the petitioner challenges the alimony award as unfairly low under RSA 458:19 (Supp. 2002). In addition, she contends that, in dividing

the respondent's defined benefit plan, the trial court erred by not taking into account the first eleven years of the parties' marriage.

We afford trial courts broad discretion in determining matters of property distribution and alimony in fashioning a final divorce decree. *In the Matter of Fowler and Fowler*, 145 N.H. 516, 519 (2000). Absent an unsustainable exercise of discretion, we will not overturn the trial court's decision. *In the Matter of Telgener & Telgener*, 148 N.H. 190, 191 (2002).

The petitioner first argues that the alimony award was inadequate considering the respondent's projected future earnings and supplemental retirement income. RSA 458:19, I, provides that the trial court shall award alimony if: (1) the party in need lacks sufficient income, property, or both to provide for his or her reasonable needs, considering the marital standard of living; (2) the payor is able to continue to meet his or her own reasonable needs, considering the marital standard of living; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs, or is the custodian of the parties' child, whose circumstances make employment for the custodian outside the home inappropriate.

> In determining the amount of alimony, the court shall consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(l); and the federal tax consequences of the order.

RSA 458:19, IV(b).

The petitioner contends that the alimony award was inadequate considering the difference between her projected future income and the respondent's projected future income. Specifically, she argues that, over the next ten years, her spendable (after tax) income will remain at approximately $55,000, while the respondent's income will increase to over $258,000 plus the supplemental retirement benefits that he will receive. She contends that this discrepancy in future income entitles her to a greater alimony award. We disagree.

■ Essentially what the petitioner seeks is a share in the respondent's future earnings. We have previously recognized that the purpose of alimony is not to provide a lifetime profit-sharing plan. *Calderwood v. Calderwood*, 114 N.H. 651, 653-54 (1974). Compensation for services to be rendered after the marriage is dissolved is future income, which cannot be

considered property belonging to a party at the time the marriage terminates. *In the Matter of Valence and Valence*, 147 N.H. 663, 667 (2002) (applying RSA 458:16-a, I, to unvested stock options).

The petitioner relies upon *Fowler* to support her position that the alimony award here was insubstantial. In *Fowler*, the parties were married for twenty-four years, during which the husband attended chiropractic college and joined a chiropractic practice, earning between $130,000 and $160,000 per year. *Fowler*, 145 N.H. at 516. The wife, on the other hand, did not work during the marriage and, in fact, was discouraged from doing so by her husband. *Id.* The trial court awarded the wife weekly alimony in the amount of $300 for six years, on the condition that she complete a bachelor's degree within that time period. *Id.* at 518. Otherwise, a reduced alimony schedule would be applied, whereby the wife would receive $300 per week for thirty months; $200 per week for the next twelve months; and $100 per week for the final twelve months. *Id.* On appeal, we held that the alimony award was inadequate in light of the wife's modest job history, the standard of living to which she had become accustomed in her marriage, the length of the marriage, the wife's non-economic contributions to the marriage and the husband's ability to pay alimony. *Id.* at 520-21.

■ The petitioner's reliance upon *Fowler* is misplaced. The alimony award here is substantially greater — in amount and duration — than that awarded in *Fowler*. Here, the trial court awarded long-term alimony of at least $4,000 per month until the respondent retires or payment of retirement benefits commences. Implicit in the court's alimony award was a consideration of the length of the marriage, the petitioner's earning capacity, the award of the marital home to the petitioner, the needs of the parties and the fault of the respondent. Although the court made no specific finding as to the marital standard of living, it did conclude that, in order to pay for their children's college tuition, the parties had to borrow from either the respondent's 401(k) plan or the home equity line of credit, as well as obtain federal Stafford loans. For these reasons, the evidence supports the court's conclusion that the petitioner's combined income of $21,000 per year in expected earnings and $48,000 per year in alimony is sufficient to meet her reasonable needs, considering the marital standard of living. Accordingly, we hold that the trial court's award of alimony constitutes a sustainable exercise of discretion.

■ Next, the petitioner argues that in its division of the respondent's defined benefit plan, the trial court erroneously excluded consideration of the first eleven years of marriage, prior to the respondent commencing employment with the medical center. In *Hodgins*, 126 N.H. at 715-16, we established a formula for equitably apportioning pension benefits when the

actual and contingent values are unascertainable. The formula is based upon a percentage calculated by dividing the number of months the employee was employed during the marriage and prior to the commencement of the divorce proceedings, by the total number of months of credits the employee will have earned toward the pension as of the date benefits commence. *Id.* at 716. Accordingly, only those pension benefits which are attributable to the retiree's employment during the marriage are subject to distribution. *Id.*

The trial court based its calculation of the pension benefits payable to the petitioner upon the *Hodgins* formula. In calculating the appropriate percentage, it used the date that the respondent began employment with the medical center and became a participant in its pension plan. This comports with the formula set forth in *Hodgins*, which clearly contemplates that the numerator in the percentage calculation include only those months during the marriage in which the employee is a participant in the pension plan. *See id.* The petitioner's argument — that "the first years of employment when [the respondent] attended medical school and began his career as an intern and resident are so critical to his later hiring and earning that they should be included in the fraction" — contravenes our caselaw. To the extent that she urges us to change the formula, we decline to do so.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.