Hillsborough-southern judicial district
No. 2005-727

IN THE MATTER OF JOHN M. MAYNARD AND INGRID I. MAYNARD

Argued: January 17, 2007
Opinion Issued: July 13, 2007

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the petitioner.

*Brennan, Caron, Lenehan & Iacopino,* of Manchester (*Kathleen A. Hickey* on the brief and orally), for the respondent.

DUGGAN, J. The respondent, Ingrid I. Maynard (wife), appeals and the petitioner, John M. Maynard (husband), cross-appeals a final divorce decree recommended by a Marital Master (*Love,* M.) and approved by the Superior Court (*Hampsey,* J.). We affirm.

The following facts appear in the record. The parties were married in 1978 and have two children. Throughout the course of their marriage, the husband worked outside of the home and provided income for the family, while the wife stayed at home and cared for the children. Even after both children had entered school, the wife's employment was limited to substitute teaching and volunteer work at the children's elementary school. At some point later in the marriage, the wife's mental and physical health began to deteriorate.

On February 5, 2002, the husband filed a petition for divorce, alleging that irreconcilable differences between the parties caused an irremediable breakdown of the marriage. The superior court issued an order of notice on March 4, 2002, stating that a temporary hearing/structuring conference was scheduled for April 18, 2002. The order stated that the wife:

> must file a written appearance with the Clerk on or before March 28, 2002. If you or your attorney do not file an appearance, the Court will treat this case as though you were admitting the facts in the attached Petition. If you wish to file an answer, it must be filed by April 28, 2002.... If you do not comply with these requirements, you may be considered in DEFAULT, you may not have an opportunity to dispute this case and the Court may

issue orders in this matter which may affect you without your input.

The record indicates that the wife was served with the petition and order of notice by a deputy sheriff from the Hillsborough County Sheriff's Department on March 21, 2002. The wife, however, disputes that she received timely notice. She alleges that when the sheriff attempted to serve her, she did not answer the door. Further, she claims that her husband placed copies of the petition for divorce and order of notice in her school bag, which she did not discover until after the date of the temporary hearing.

The wife did not file a timely appearance or answer, nor did she attend the temporary hearing. Consequently, the court found her to be in default, and scheduled a final default hearing for July 1, 2002. The court also approved the husband's temporary order, which provided that in lieu of alimony, the husband would continue to pay monthly expenses at the residence occupied by the wife, including the monthly mortgage payment, property taxes, telephone, utilities and home and auto insurance.

The wife appeared *pro se* at the final default hearing, and the matter was continued to allow the parties to commence settlement discussions. Ultimately, settlement discussions were fruitless, and a final divorce hearing was scheduled for May 29, 2003. Both parties appeared with counsel for the May 29th hearing; however, the wife was taken away by ambulance before the hearing commenced. As a result, the court issued an order giving the wife "7 days from the Clerk's date of notice hereof to file an objection *and* her Proposed Final Order. Should she fail to do either, the Court may adopt [the husband's] Proposed Final Order as final orders in this case and the matter shall be concluded."

Thereafter, the wife filed a timely objection to the husband's proposed final order and a motion to strike the default. The court denied the wife's motion, and ruled that "since the [wife] timely filed an objection to the adoption of the [husband's] Proposed Decree, a final hearing on the merits shall be scheduled . . . ."

Shortly following the court's order, the wife was admitted to the New Hampshire Hospital in Concord. Over the course of her approximately eleven-month stay at the hospital, the parties filed numerous motions and requests for continuances. Notably, the wife filed a motion to modify alimony and a motion to compel answers to interrogatories. On July 9, 2004, the court denied both motions and ordered that the matter be scheduled for a final hearing. Subsequently, on March 21, 2005, the wife filed another motion for alimony. This motion was also denied.

The court conducted a final hearing on April 25, 2005, during which it heard testimony from both parties. On May 5, 2005, the court issued a decree of divorce. The court again refused to award alimony to the wife, explaining that "[b]y prior court rulings, the [wife] waived her claim to alimony." With respect to property division, the court ordered that the significant assets of the marital estate—*i.e.*, the real property owned by the parties—be split between them with sixty percent awarded to the wife and forty percent awarded to the husband. The wife filed a motion to reconsider, and the husband filed a motion to clarify/reconsider. The court denied the wife's motion, clarified one portion of the decree, and otherwise denied the husband's motion.

On appeal, the wife argues that the superior court erred by: (1) denying her request to strike the default; (2) concluding that her failure to plead alimony, as a result of her default, precluded her from requesting alimony at the final hearing; (3) denying her motion to compel answers to interrogatories; and (4) denying her requests for alimony.

In response, the husband argues that: (1) because the wife defaulted, she cannot seek alimony; (2) the court properly exercised its discretion by finding the wife in default; (3) his initial proposal regarding alimony did not "waive" the default; and (4) the court properly exercised its discretion by not awarding alimony. On cross-appeal, he argues that the court should have reached a more equitable property distribution.

First, we address the wife's argument that the superior court erred by denying her request to strike the default. She contends that despite the fact that the sheriff's return of service indicated service at her residence, she was unaware of the temporary hearing on April 18, 2002. She further contends that the husband admitted he probably placed the orders of notice in her school bag, and the temporary orders in the glove compartment of her car. The wife argues that between the husband's actions of "hiding" the hearing documents and the impact that the divorce had on her mental health, it cannot be concluded that she received adequate notice, and thus the default should have been stricken.

■ "The trial court's decision whether to strike an entry of default is within its discretion; we will not disturb such a ruling unless the court [unsustainably exercised its] discretion or erred as a matter of law." *Lakeview Homeowners Assoc. v. Moulton Constr., Inc.*, 141 N.H. 789, 791 (1997) (quotation omitted); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). Despite the wife's contentions, the record supports the conclusion that she received adequate notice. On March 4, 2002, the superior court sent the wife notification that the husband had filed a petition for divorce, complete with

instructions for accepting service and notice of the April 18th temporary hearing and structuring conference. The wife does not claim that' she did not receive the court's notification. Furthermore, the record shows that the husband had the Hillsborough County Sheriff's Office serve the wife with the divorce petition and orders of notice at her residence. The return of service—dated March 21, 2002—indicates that a deputy sheriff served the wife "by leaving at the abode of [the wife] . . . a copy of the writ and order of notice . . . ." Although the wife maintains that she did not answer the door for the sheriff, we have previously held that a "sheriff's return of service is entitled to a presumption of correctness . . . ." *Adams v. Sullivan*, 110 N.H. 101, 103 (1970). Equally significant, the superior court specifically found "the [wife's] testimony concerning lack of notice of the Petition for Divorce not credible."

While the superior court's order on the motion to strike the default states that the wife "had notice of these proceedings since at least April 25, 2002," the record shows that she had notice earlier than that date and well before the default was entered on April 18, 2002. Thus, nothing in the record suggests that the superior court unsustainably exercised its discretion or erred as a matter of law in finding the wife to be in default. Accordingly, we reject the wife's argument.

Next, we address the wife's argument that the superior court erred by concluding that her failure to plead alimony, as a result of her default, precluded her from requesting alimony at the final hearing. The wife contends that the superior court's conclusion is contrary to RSA 458:19 (2004). The husband counters that Superior Court Rule 185 requires a responding party to file an answer if he or she wishes to seek alimony or other affirmative relief during a divorce proceeding. *See* SUPER. CT. R. 185. He argues that since the wife failed to file a timely appearance and answer, she was properly found to be in default, and thus waived her right to seek alimony during the divorce proceedings.

At first blush, Rule 185 and RSA 458:19 appear to be inconsistent. Rule 185 provides, in pertinent part: "An answer to a petition or a cross-petition [for divorce] is *required* in cases where the responding party wishes to seek alimony or other affirmative relief, or to assert an affirmative defense. In all other cases, an answer may be filed." *Id.* (emphasis added). Thus, according to the rule, a person responding to a petition for divorce *must* file an answer if the person wants to seek alimony during the divorce proceedings.

In comparison, RSA 458:19, I(a)-(c) states:

> Upon motion of either party for alimony payments, the court shall make orders for the payment of alimony to the party in

need of alimony, either temporary or permanent, for a definite or indefinite period of time, if the motion for alimony payments is made within 5 years of the decree of nullity or divorce and the court finds that:

(a) The party in need lacks sufficient income, property, or both, including property apportioned in accordance with RSA 458:16-a, to provide for such party's reasonable needs, taking into account the style of living to which the parties have become accustomed during the marriage; and

(b) The party from whom alimony is sought is able to meet reasonable needs while meeting those of the party seeking alimony, taking into account the style of living to which the parties have become accustomed during the marriage; and

(c) The party in need is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs or is the custodian of a child of the parties whose condition or circumstances make it appropriate that the parent not seek employment outside the home.

The statute gives the court discretion to consider a party's motion for alimony payments, so long as the motion is made within five years of the divorce decree, and so long as the party meets the criteria laid out in subsections (a)-(c). *Id.*

In *Associated Press v. State of New Hampshire*, 153 N.H. 120, 144 (2005), we indicated that where possible, court rules and statutes should be construed so as not to contradict each other. This analysis is consistent with the approach taken in other jurisdictions, which have held that a statute and a court rule should be harmonized whenever possible, and interpreted so as to give effect to both. *See, e.g., Bint v. Brock*, 274 Mich. App. 232, 234-35 (2007), *Kenneth T. v. Arizona Dept. Economic Sec.*, 128 P.3d 773, 774-75 (Ariz. Ct. App. 2006), *City of Spokane v. Ward*, 92 P.3d 787, 789 (Wash. Ct. App. 2004), *cert. denied*, 120 P.3d 953 (Wash. 2005).

We find that RSA 458:19 and Rule 185 can be construed according to their plain language so that they are not in conflict. Rule 185 specifies the timing of a request for alimony in the original divorce proceedings, whereas RSA 458:19 permits a request for alimony to be filed for up to five years after the divorce. A responding party's failure to comply with Rule 185 may preclude an award of alimony in the original divorce decree. However, pursuant to RSA 458:19, I, that same party may request alimony post-divorce.

■ We note that we have previously applied the standards in RSA 458:19, I, to both pre- and post-divorce determinations of alimony, and we do not retreat from those cases. *See, e.g., In the Matter of Hampers & Hampers,* 154 N.H. 275, 283-85 (2006); *In the Matter of Harvey & Harvey,* 153 N.H. 425, 430 (2006), *overruled on other grounds by In the Matter of Chamberlin & Chamberlin,* 155 N.H. 13, 16 (2007); *In the Matter of Sutton & Sutton,* 148 N.H. 676, 679 (2002). Thus, we conclude that Rule 185 and RSA 458:19 are not in conflict, and that the superior court did not err in denying the wife's repeated requests for alimony *during* the divorce proceedings. In light of the foregoing, we need not address the remainder of the parties' arguments pertaining to the wife's requests for alimony.

Next, we turn to the wife's argument that it was error for the superior court to deny her motion to compel answers to interrogatories. She argues that without the husband's answers she was denied an opportunity to meaningfully contest the distribution of marital property at the final hearing. According to the wife's motion, the interrogatories propounded on the husband sought information pertaining to: (1) the parties' assets, which the wife argued was relevant to the issue of property distribution; (2) the husband's income, which the wife stated was relevant to issues of alimony and child support; and (3) custody and visitation issues.

The husband objected, arguing, among other things, that he received the wife's interrogatories "approximately twenty (20) months after the [wife's] default, eighteen (18) months after the close of discovery, six (6) months after [the wife's] counsel filed her Appearance in this matter, and four (4) months after the Court's Order upholding the [wife's] default." The husband emphasized that he "should not be held accountable for the [wife's] failure to participate in these proceedings, to properly seek discovery, or for the [wife's] failure to gain the information she seeks through alternate means." The court denied the wife's motion "for reasons set forth in the [husband's] objection."

■ The decision to disallow pretrial discovery is within the sound discretion of the trial judge, and we will uphold it unless it is an unsustainable exercise of discretion. *Bennett v. ITT Hartford Group,* 150 N.H. 753, 760 (2004). As the husband correctly points out, the wife failed to comply with the discovery deadline and waited over a year to send the husband interrogatories. Second, the information sought in the wife's interrogatories related primarily to alimony, custody and child support. The wife is not contesting the court's rulings pertaining to either custody or child support on appeal, and we have already ruled on the issue of alimony. To the extent the wife's interrogatories sought information relevant to property distribution, we note that the wife was awarded

almost sixty percent of the significant marital assets, which was what she requested at the final hearing. Moreover, she does not dispute the court's ruling with respect to property division on appeal. Thus, we cannot say that the court unsustainably exercised its discretion in denying her motion to compel.

■ Finally, we address the husband's argument that the court should have reached a more equitable property distribution. RSA 458:16-a, II (2004) creates a presumption that equal distribution of marital property is equitable. *Hampers*, 154 N.H. at 285. Although an equal division is presumed under the statute to be equitable, the court may determine that an equal division would not be equitable. *In the Matter of Valence & Valence*, 147 N.H. 663, 666 (2002), *modified on other grounds by Chamberlin*, 155 N.H. at 16.

RSA 458:16-a, II enumerates various factors for the court to consider in fashioning its award, such as the length of the marriage, the ability of the parties to provide for their own needs, the needs of the custodial parent, the contribution of each party during the marriage and the value of property contributed by each party. *Hampers*, 154 N.H. at 285. Additionally, the court may consider "[a]ny other factor [it] deems relevant" in equitably distributing the parties' assets. RSA 458:16-a, II(o). A trial court is not precluded, however, from awarding a particular asset in its entirety to one party. *See Hampers*, 154 N.H. at 285.

As we afford the superior court broad discretion in determining matters of property distribution in fashioning a final divorce decree, we will not overturn its decision absent an unsustainable exercise of discretion. *Id.* If the court's findings can reasonably be made on the evidence presented, they will stand. *Id.*

In support of his argument, the husband points to many aspects of the court's property distribution award and then makes the blanket assertion that they are not "equitable." The superior court expressly found that "[i]n making its award, the Court has considered the [wife's] non-economic contribution to the marriage for raising the children and caring for the parties' home." In addition, it found, among many other facts, that: (1) the parties had a long-term marriage; (2) the wife was unemployed; (3) the husband received a $100,000 salary with health insurance and retirement benefits; (4) the wife has "never" earned enough money to support herself; (5) the wife primarily cared for the children while the husband primarily earned the family income; (6) the wife suffered from specific mental and physical health issues; (7) the husband had "a superior ability to acquire future assets" as compared to the wife; and (8) an unequal distribution of assets in favor of the wife would be equitable.

■ Accordingly, the record demonstrates that, in reaching its final award, the court correctly considered many of the factors enumerated in RSA 458:16-a, II. Although the husband may be dissatisfied with the award, the court made findings which support it, and the husband does not argue that these findings do not enjoy support in the record. Nor does he cite any legal authority indicating that this particular distribution was impermissibly inequitable or argue that any specific aspect of the distribution was erroneous as a matter of law. Therefore, we cannot say that the court's exercise of discretion was unsustainable. *Hampers*, 154 N.H. at 285.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, J., concurred.