NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Brentwood Family Division
No. 2016-0468

IN THE MATTER OF LESLIE DOW AND HARRY DOW, IV

Argued:  May 24, 2017
Opinion Issued:  August 15, 2017

Cleveland, Waters and Bass, P.A., of Concord (William B. Pribis on the memorandum of law and orally), for the petitioner.

John A. Macoul, of Salem, by brief and orally, for the respondent.

BASSETT, J.  The respondent, Harry Dow, IV, appeals an order of the Circuit Court (Greenhalgh, J.) requiring him to pay alimony to the petitioner, Leslie Dow, in the amount of $750 per month for three years.  When it calculated the amount of alimony, the trial court declined to impute income to the petitioner, concluding that it had no authority to do so under RSA 458:19 (Supp. 2016).  On appeal, the respondent argues, among other things, that the trial court erred because RSA 458:19 authorizes the imputation of income for the purpose of determining the amount of alimony.  We agree with the respondent and, therefore, vacate and remand.

The record supports the following facts.  The parties were married for over thirty years.  For much of the marriage, the petitioner worked at a preschool in Massachusetts, and the respondent worked for a local carpenters' union.  In 2010, the parties agreed that the petitioner should leave her

position, where she was earning approximately $21 per hour, to spend time with the parties' grandchildren. In October 2013, the respondent's employment with the union ended, and he began receiving unemployment benefits.

The parties divorced in April 2014. In their stipulated divorce decree, the parties agreed that the respondent had no ability to pay alimony, and that, once he obtained new employment, the petitioner could request alimony.

In October 2014, the respondent started a business. Subsequently, the petitioner filed a motion requesting alimony, alleging that the respondent was earning sufficient income through his business. The respondent objected, arguing that the petitioner had "failed to take . . . meaningful action to become self-sufficient" and had "the ability to generate sufficient income . . . to provide for her own reasonable needs." At the hearing on the motion, the respondent argued that the trial court should consider both the fact that the petitioner had been earning $21 per hour at her previous position, and the lack of evidence that the petitioner had made diligent efforts to obtain employment after the divorce.

The trial court granted the petitioner's motion and ordered the respondent to pay $750 per month for a period of three years. Although the court determined that the petitioner could not be fully self-supporting, it also found that she was "capable of . . . contributing to her own support" and had "failed to take . . . meaningful action to become self-sufficient." The trial court declined to impute income to the petitioner, however, concluding that it had no authority to do so under RSA 458:19. Specifically, the court stated, "[RSA 458:19, IV(e)] provides a basis for imputation of income for alimony purposes and [is] applicable to the obligor only. Therefore I cannot impute income to the [p]etitioner." The trial court denied the respondent's motion for reconsideration, and this appeal followed.

On appeal, the respondent argues, among other things, that the trial court erred when it ruled that it had no authority, under RSA 458:19, to impute income to the petitioner. Because we agree that a trial court has the statutory authority to impute income when it determines the amount of alimony, we need not address the respondent's other arguments.

We review the trial court's statutory interpretation de novo. In the Matter of Lyon & Lyon, 166 N.H. 315, 318 (2014). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the

legislature did not see fit to include.  Id.  Further, we interpret a statute in the context of the overall scheme and not in isolation.  Id.

RSA 458:19, IV(b) (Supp. 2016) provides:

> In determining the amount of alimony, the court shall consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(*l*); and the federal tax consequences of the order.

It is well-established that, when determining the amount of alimony, the trial court may consider the earning capacities of both parties.  See, e.g., In the Matter of Sutton & Sutton, 148 N.H. 676, 680 (2002); Hoffman v. Hoffman, 143 N.H. 514, 519 (1999).  Given that RSA 458:19 authorizes a trial court to consider the earning capacities of the parties when determining the amount of alimony, it logically follows that a trial court may impute income to either party, including the recipient, based upon earning capacity.

In so concluding, we join the many courts that have held that "[i]mputing income to an unemployed or underemployed spouse when setting an alimony award is conceptually appropriate as part of the determination of that spouse's ability to produce a sufficient income."  Willey v. Willey, 866 P.2d 547, 554 (Utah Ct. App. 1993); see, e.g., Green v. Green, 126 So. 3d 1112, 1114 (Fla. Dist. Ct. App. 2012) ("[T]he amount of income a spouse may be able to earn is a factor the court should consider in determining an alimony award." (quotation omitted)); Christianson v. Christianson, 671 N.W.2d 801, 809-10 (N.D. 2003) (Maring, J., concurring in part and dissenting in part) (collecting cases for proposition that "where a party has voluntarily reduced his income, the court may impute income to arrive at an amount for spousal support"); 3 A. Rutkin, Family Law and Practice § 35.03[1][b], at 35-36 n.16 (2016) (same).

In fact, on a number of occasions, we have affirmed alimony orders in which the trial court took into account the earning potential of the party seeking alimony.  For example, in Sutton & Sutton, we upheld an alimony order in which the trial court imputed income to the receiving spouse in the amount of $21,000 per year.  See Sutton & Sutton, 148 N.H. at 680.  In that case, the trial court "found the petitioner capable of renewing her nursing license and obtaining a position with a starting annual salary of $21,000."  Id. at 678.  We affirmed the order of the trial court because "the evidence support[ed] the court's conclusion that the petitioner's combined income of $21,000 per year in expected earnings and $48,000 per year in alimony [was] sufficient to meet her reasonable needs."  Id. at 680.  We have employed similar

3

reasoning in other cases. See, e.g., Dionne v. Dionne, 129 N.H. 638, 640-41 (1987) (per curiam) (upholding alimony order where master found that receiving spouse was "capable of earning $820 per month"); Parker v. Parker, 122 N.H. 658, 662 (1982) (per curiam) (decided under prior law) (upholding alimony order of $100 per week to defendant, where master reasonably found that defendant was otherwise able to "earn sufficient money to contribute to the provision" of her reasonable needs).

Nonetheless, the petitioner argues that RSA 458:19, IV(e) (Supp. 2016) is the only authority for the trial court to impute income for alimony purposes. We disagree. That provision provides that, when a court determines whether to modify an existing alimony order, "the earned or unearned income and social security disability payments of a spouse of the obligor party shall not be considered a source of income to that obligor party." RSA 458:19, IV(e). The provision goes on to provide an exception to this rule: if the "obligor party resigns from or refuses employment or is voluntarily unemployed or underemployed, . . . the income of a subsequent spouse may be imputed to the obligor party only to the extent that such obligor party could have earned income in his or her usual employment." Id. Thus, by its plain terms, subparagraph IV(e) sets forth the narrow circumstances in which the income of a subsequent spouse may be attributed to the obligor party; the provision does not operate as a broad limitation on the authority of the trial court to consider the earning potential of a party when calculating the appropriate amount of alimony. This subparagraph says nothing in regard to the issue of imputing income to the party seeking alimony (the obligee).

The petitioner also contends that RSA 458:19 does not permit the imputation of income because, unlike our child support statute, RSA 458:19 does not contain an explicit authorization to that effect. See RSA 458-C:2, IV(a) (Supp. 2016) (authorizing, in certain circumstances, the trial court to consider "as gross income the difference between the amount a parent is earning and the amount a parent has earned"). We disagree. The language of RSA 458:19, IV(b) explicitly authorizes a trial court to consider the earning capacities of the parties when determining the amount of alimony. Accordingly, we conclude that the trial court may impute income to either party as part of that determination. See Hoffman v. Town of Gilford, 147 N.H. 85, 87 (2001) ("If the statute is plain and unambiguous, we need go no further in resolving the issue.").

Finally, the petitioner argues that, even if the trial court erred, the alimony order should be upheld because the error was harmless. The petitioner correctly observes that the trial court denied the respondent's request for a finding that the petitioner was "voluntarily unemployed [or] under-employed." The petitioner asserts that, in light of this finding, "the result . . . would remain unchanged." We are not persuaded. The trial court also found that the petitioner was capable of being self-supporting, and that

4

she had failed to take "meaningful action" to attain that status. The trial court's findings suggest that it had determined that the petitioner could obtain employment. However, because the trial court ruled that it could not impute income, it is unclear whether, or to what extent, the trial court considered these findings when it determined the amount of alimony.

Therefore, we vacate the decision of the trial court and remand for further proceedings consistent with this opinion. See In the Matter of Doherty & Doherty, 168 N.H. 694, 700 (2016). We note that the petitioner also claims that, after the trial court issued the alimony order, the respondent obtained new employment. The petitioner argues that, as a result, she may be entitled to a greater alimony award. We decline to consider the petitioner's claim in the first instance. She may raise the claim in the trial court upon remand.

Vacated and remanded.

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.